## HINKEFENT v. STATE.
### No. A-11895.

Criminal Court of Appeals of Oklahoma.
Feb. 24, 1954.

Luther P. Lane, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error, hereinafter referred to as defendant, was charged in the court of common pleas of Tulsa county with the offense of driving a motor vehicle while under the influence of intoxicating liquor, was tried before a jury, found guilty and his punishment assessed at a fine of $125.

Counsel for defendant, in his statement of facts, sets out:

"The plaintiff in error, a young man, worked on a farm, ranch near Collinsville, Tulsa County, Oklahoma. He had supper on that Saturday night with the family of his young lady friend; after supper they drove to a near-by Inn, and spent a portion of the evening visiting there with their friends and playing shuffle board. He drank some, but was not drunk. Later in the evening she and he left in the car to go to her home, and had almost gotten there

when they were accosted by two highway officers. * * * "

The highway patrolmen testified to noticing defendant's car being driven from one side of the road to the other, and narrowly missing a truck, and to stopping the defendant, asking to see his driver's license, and to smelling alcohol on the defendant's breath, and to thereafter finding in the defendant's car an almost empty pint bottle of Gilbey's Distilled Gin.

Both the officers, Pat Moran and Paul Weatherbee, testified that from defendant's manner of speech, which was described, and by reason of his unsteadiness when walking, and the odor of alcohol, in addition to the erratic driving, that it was their conclusion that defendant was intoxicated; that they so advised him, but he denied being intoxicated; that they then asked him if he wanted to blow up a balloon and take an intoximeter test, advising him that he had the right to refuse to take such a test, but should he take it and it should actually show that he was not intoxicated, charges would not be pressed. Officer Weatherbee testified to making the test on the spot, described the kit and equipment for taking the specimen of defendant's breath and to sending the resulting specimen to a laboratory in the Medical Arts Building, Tulsa, for completion of the test.

H. L. Spencer, chemist and bacteriologist, testified to testing the specimen, which was properly identified, and that he found it to contain 2.71 milligrams of alcohol, which corresponded to .23 per cent alcohol in the blood.

Dr. W. O. Hart, after qualifying, testified that "From 0.15 blood alcohol all people, 100%, will be under the influence of alcohol."

The defendant testified, and admitted having the bottle of gin and drinking, but claimed others drank from the bottle and denied that he was intoxicated.

There was much other evidence, not necessary to summarize, in that there was substantial evidence to support the charge of intoxication, and such being the case, the rule is that where there is competent evidence to sustain the jury's verdict, it is the jury's exclusive province to weigh the evidence and determine the facts. Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643; Lutz v. State, 93 Okl.Cr. 293, 227 P.2d 692.

Counsel for defendant recognizes the above rule, but seeks a reversal of the conviction by the claim that the constitutional rights of the defendant were violated, Okl. Const. Art. 2, § 21, in that the defendant in effect was tricked into taking the intoximeter test, and that the promise made by the officers that no charge would be filed if the intoximeter test was favorable to the defendant, constituted a ruse and rendered the results of the intoximeter test inadmissible in evidence. It is asserted by counsel:

"No one can invade the constitutional rights of a citizen by an indirect method, any more than they can do so by a direct method. This is tantamount to an officer holding out a hope of freedom if one would just confess, and then trying to use his confession as valid."

We conclude that there is a distinct difference between a case where one is induced to confess to a crime by means of threats or offers of favor, and the facts in the within case. Here the evidence discloses no threats. The officers were frank with the defendant and advised him that in their opinion he was intoxicated, or drunk, but that irrespective of their opinion, if he wanted to take the intoximeter test and if it indicated that he did not have sufficient alcohol in his system to indicate intoxication, that charges would not be pressed. And while defendant admitted to having had a few drinks of alcoholic liquor, he denied being drunk, yet he no doubt felt that he had all to gain and nothing to lose, and on a gamble that the test might not verify the conclusions of the officers, defendant willingly submitted to the intoximeter test. The defendant never at any time confessed to being drunk. He denied this at all times. The outcome of the tests did not amount to testimony from him but that of an expert as to a state of being based on defendant's bodily condition brought about by the presence of alcohol as measured and determined by recognized scientific formula and method.

Thus, evidence secured by the drunkometer test or blood tests or urinary test as to the percentage of alcohol present in the human system cannot be classed with confessions, as urged by defendant's counsel, but rather are comparable with such scientific tests for identity as fingerprints, footprints, Payne v. State, Okl.Cr., 239 P.2d 801; Nowlin v. State, 65 Okl.Cr. 165, 83 P. 2d 601, shoe prints, Goodbarry v. State, 50 Okl.Cr. 185, 296 P. 985; Ricketts v. State, 23 Okl.Cr. 267, 215 P. 212, or even the disclosure of birthmarks, bodily scars, abnormalities or dentures. As stated by Mr. Justice Holmes in Holt v. United States, 218 U.S. 245, 252, 253, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 20 Ann.Cas. 1138: "But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."

But here we are not called upon to approve a rule as broad as that stated by Justice Holmes. Though the statement was apparently dicta, this court in Turvey v. State, Okl.Cr., 247 P.2d 304, 307, states: "The court should not admit evidence of defendant's intoxication where such tests were given over objection of accused." Cited was the case of Apodaca v. State, 140 Tex.Cr. 593, 146 S.W.2d 381.

In the within case the accused agreed to the examination. He was not promised immunity by reason of such agreement to have a test for alcohol made of his breath. But he was advised that in the event the test did not support the conclusions of the officers that accused was in fact intoxicated, no charge would be pressed.

The identical question here raised, except it involved a voluntary blood test for intoxication, was raised in State v. Small, 233 Iowa 1280, 11 N.W.2d 377, 378. There the court, in the body of the opinion, said:

"The testimony heretofore set forth definitely shows that the taking of blood from the appellant for the purpose of making a test was with his consent. A study of the testimony of Dr. Mater discloses that all that he told the defendant was that he (the doctor) was convinced that the appellant was intoxicated and would so testify and that a blood analysis would either confirm or disprove the doctor's testimony. The claim that duress was used in obtaining the consent of the appellant in the taking of blood is without support in the evidence. Duress implies compulsion; the use of action or statements that deprive an individual of the free exercise of his will. The testimony of Dr. Mater does not substantiate the contention of the appellant. It is a significant fact that the appellant in his testimony does not testify to any facts whatsoever relative to the taking of his blood by Dr. Mater and does not make any claim that any duress was exerted over him in connection with the obtaining of a blood specimen. As previously stated we held in State v. Benson, supra [230 Iowa 1168, 300 N. W. 275], that the testimony as to the fact that the defendant refused to take a blood test was admissible."

See State v. Morkrid, Iowa, 286 N.W. 412; City of Columbus v. Thompson, Ohio App., 89 N.E.2d 604; People v. Corder, 244 Mich. 274, 221 N.W. 309; Moon v. State, 22 Ariz. 418, 198 P. 288, 16 A.L.R. 362. See also State v. Sturtevant, 96 N.H. 99, 70 A.2d 909; Block v. People, 125 Colo. 36, 240 P.2d 512; note at 127 A.L.R. 1514; and 159 A.L.R. 216, and editorial note at page 210.

This court has had the question of the admissibility in evidence of various tests for intoxication (where voluntarily agreed to) for consideration in a number of cases where the objections to the admissibility of such evidence were based on other grounds than raised in the within case. See Toms v. State, Okl.Cr., 239 P.2d 812; Lombness v. State, Okl.Cr., 243 P.2d 389; McDaniel v. State, Okl.Cr., 245 P.2d 771; Bowden v. State, Okl.Cr., 246 P.2d 427.

By reason of what has been said, the judgment of the court of common pleas of Tulsa County is affirmed.

JONES and BRETT, JJ., concur.